IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAI`I

| | | |
|---|---|---|
| ARNOLD JAMES PADGETT, | ) | CIVIL NO. 07-00200 DAE-LEK |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| CIGNA CORPORATION, ET AL., | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

## FINDINGS AND RECOMMENDATION TO DENY PLAINTIFF'S MOTION TO REMAND

Before the Court is Plaintiff Arnold James Padgett's ("Plaintiff") Motion to Remand ("Motion"), filed May 11, 2007. Defendants CIGNA Corporation, Life Insurance Company of North America, CIGNA Life Insurance Company of New York, and CIGNA Group Insurance (collectively "CIGNA Defendants"), and Defendant Ani Djegelian (all collectively "Defendants") filed a memorandum in opposition on May 25, 2007, and Plaintiff filed his reply on June 7, 2007.  Pursuant to this Court's order, Defendants filed a supplemental memorandum on August 13, 2007 and Plaintiff filed his supplemental memorandum on August 27, 2007.  Defendants filed a reply to Plaintiff's supplemental memorandum on September 4, 2007.  The Court finds this matter suitable for disposition without a hearing pursuant to Rule 7.2(d) of the Local Rules of Practice of the United States District Court of the District of Hawai`i ("Local Rules").  Upon careful consideration of the Motion, supporting and opposing memoranda, and the relevant legal

authority, this Court HEREBY FINDS and RECOMMENDS that
Plaintiff's Motion be DENIED for the reasons set forth below.

## BACKGROUND

Defendant Life Insurance Company of North America
("LINA") issued a long-term disability insurance policy, Policy
Number SKL 30004 to Plaintiff's employer, Brown and Caldwell
("the Policy"). [Complaint at ¶ 6.]  On or about December 31,
2004, Plaintiff began receiving payments under the Policy based
on a determination that he was partially disabled.  Plaintiff
states that he is infected with Hepatitis C and, as result,
suffers from advanced liver disease and other symptoms and
conditions.  Plaintiff alleges that he is fully disabled and is
no longer able to continue his employment.  [Complaint at ¶ 7.]
Plaintiff continued to receive payments until January 2007.
[Complaint at ¶ 8, Exh. A.]

Plaintiff states that a CIGNA employee contacted him by
phone during the summer of 2006.  The employee informed him that
he needed to undergo a psychological evaluation to continue
receiving disability benefits.  Plaintiff's health care provider
arranged for an evaluation, which was conducted on September 7
and 14, 2006.  A report of the evaluation was forwarded to
Djegelian, who was assigned to Plaintiff's case in October 2006.
Plaintiff alleges that the purpose of her assessment was to
terminate Plaintiff's benefits.  [Complaint at ¶¶ 9-10.]

2

Djegelian had Forest Hills IPA, Inc. ("Forest Hills"), and Nick

DeFilippis, Ph.D.,[1] issue a report based on their review of

Plaintiff's evaluation and other materials.  Plaintiff claims

that the report was to be used as a pretext for terminating his

benefits.  [Complaint at ¶ 11, Exh. B.]  This was allegedly part

of an ongoing arrangement whereby Forest Hills would prepare

reports which the CIGNA Defendants could use to unlawfully

terminate their insureds' benefits.  [Complaint at ¶ 12.]

On January 26, 2007, Djegelian contacted Plaintiff by

phone and informed him that the CIGNA Defendants were terminating

his benefits based on a determination that he was no longer

disabled.  Plaintiff's counsel sent Defendants a letter dated

February 1, 2007 notifying them that Plaintiff considered the

termination of benefits unlawful and that their conduct

constituted bad faith actionable under Hawai`i state law.

[Complaint at ¶¶ 16-17.]  Through a series of letters,

Plaintiff's counsel inquired into the bases for the termination

of benefits and demanded the restatement of Plaintiff's benefits.

[Complaint at ¶¶ 20-22.]

On March 5, 2007, Plaintiff commenced the instant

action in the Second Circuit Court, State of Hawai`i ("state

court").  Plaintiff alleges that Defendants: terminated his

_____

[1] Plaintiff originally named Forest Hills and DeFilippis as
defendants in this action, but he voluntarily dismissed the
claims against them without prejudice on May 2, 2007.

benefits without conducting a reasonable investigation; failed to adopt and implement reasonable standards for the prompt investigation of claims; failed to make a good faith attempt to reach a prompt, fair and equitable settlement; conspired to provide a pretext for the termination of his benefits; refused to identify the facts or Policy language that they relied upon to terminate his benefits; refused to provide information relating to Plaintiff's appeal of the termination; do not intend to comply with the applicable law, the Policy, or their own written policies; and refused to pay for psychological testing that they claimed was necessary to prove Plaintiff's disability. [Complaint at ¶¶ 22, 25, 27.]  Plaintiff further claims that Defendants terminated his benefits, despite their knowledge that he is disabled, and they are forcing him to go through an unnecessary and unfair appeal process.  [Complaint at ¶¶ 24, 26.]

        Plaintiff argues that Defendants' conduct: violates Haw. Rev. Stat. § 431:1-102; violates Haw. Rev. Stat. § 431-13-101, *et seq.*, in particular the prohibition against unfair claims and settlement practices set forth in Haw. Rev. Stat. § 431-13-103(a)(11); constitutes a civil conspiracy; constitutes the tort of first party insurer bad faith; was negligent; constitutes intentional and/or negligent infliction of emotional distress; and warrants the imposition of punitive damages.  [Complaint at ¶¶ 25, 27, 30-33, 36.]  Plaintiff has fulfilled his obligations

4

under the Policy and alleges that the CIGNA Defendants are estopped from asserting that he is not disabled because they began making partial disability payments to him in December 2004 and total disability payments in November 2005.  Further, there is no factual, legal, or medical evidence suggesting that he is not disabled.  [Complaint at ¶¶ 34, 37.]

Plaintiff alleges that the total amount of damages he has suffered as a result of Defendants' tortious conduct does not exceed $75,000.00.  [Complaint at ¶ 39.]  Plaintiff seeks special damages, general damages, costs, prejudgment interest, and another appropriate relief.  [Complaint at pg. 15.]

Defendants filed their Answer on April 9, 2007 in state court and filed their Notice of Removal on April 13, 2007. Defendants asserted that removal was proper based on both diversity jurisdiction and federal question jurisdiction. Defendants argue that Plaintiff's claims are completely pre-empted by the Employee Retirement Income Security Act, 29 U.S.C. § 1001, *et seq.* ("ERISA").  [Notice of Removal at ¶¶ 8-9.]

In the instant Motion, Plaintiff argues that removal was improper because the district court does not have either diversity jurisdiction or federal question jurisdiction.  The amount in controversy does not meet the statutory minimum for diversity jurisdiction and the Notice of Removal does not establish that ERISA applies.  Plaintiff emphasizes that the

5

Compliant does not mention the United States Constitution, federal law, or federal treaties.  It does not seek the payment of benefits under the Policy, damages for breach of contract, or attorney's fees.  Plaintiff argues that the Complaint seeks damages for tortious conduct based on state insurance law and this type of claim is not pre-empted where no ERISA claim exists. Plaintiff seeks remand back to the state court and an award of attorney's fees and costs associated with the improper removal.

In their memorandum in opposition to the Motion, Defendants argue that it is irrelevant that Plaintiff did not mention ERISA in the Complaint.  Plaintiff's claims are governed by ERISA because they are premised upon the allegedly wrongful termination of Plaintiff's benefits.  Defendants also argue that ERISA completely pre-empts Plaintiff's state law claims because the claims relate to an employee benefit plan.  Defendants allege that the Hawai`i Insurance Code does not create a private right of action in favor of insureds.  Thus, Plaintiff's only actionable claims seek judicial interpretation and enforcement of his rights under the Policy and such claims fall within ERISA's civil enforcement provisions.  Defendants argue that Plaintiff's failure to exhaust his administrative remedies does not render removal improper.  ERISA can pre-empt a plaintiff's claims even though the plaintiff's ERISA claims are not viable.  Defendants contend that the federal court has jurisdiction, but that

Plaintiff's Complaint should be dismissed for failure to exhaust administrative remedies.

Finally, Defendants argue that there is diversity jurisdiction because the amount in controversy exceeds $200,000.00.  If Plaintiff's benefits are reinstated, he would be entitled to disability benefits of $2,631.04 a month for another eleven years.  Even if Plaintiff does not seek the reinstatement of his benefits, Defendants argue that the amount of benefits Plaintiff would have received may be used as a measure of his damages.

In his reply, Plaintiff argues that the Court should not consider the copy of the Policy which Defendants submitted as Exhibit 2 to their memorandum in opposition ("Exhibit 2") because it is hearsay.  Defendants' counsel stated in his declaration that he had personal knowledge of the facts in the case, but Plaintiff argues that counsel did not establish personal knowledge of when the Policy was executed, who issued it, and to whom it was issued to.  Further, Exhibit 2 is not signed or sworn and does not indicate the effective date.

In addition to reiterating the arguments raised in the Motion, Plaintiff emphasizes that his Complaint does not raise an ERISA claim because, as Defendants contend, he has not exhausted his administrative remedies for the putative ERISA claim. Plaintiff also notes that, after remand to the state court,

7

Defendant may still move for summary judgment based on their
ERISA pre-emption defense.  Plaintiff argues that there is no
ERISA pre-emption because Defendants have not presented
admissible evidence of an ERISA scheme and plan.  Defendants have
failed to establish that the Policy at issue, Plaintiff's
employer, the employee plan, and the insurer meet ERISA's
requirements.  Further, Defendants have not addressed Plaintiff's
civil conspiracy claim, which has nothing to do with ERISA.
Plaintiff contends that the state court should rule upon the
claims that he brings under state law.

        Finally, Plaintiff argues that there is no diversity
jurisdiction because he is not seeking benefits under the Policy.
He notes that, subject to a good faith requirement, a plaintiff
is free to sue for an amount less than he would be entitled to so
that he can avoid federal jurisdiction.  In order to overcome
Plaintiff's assessment of his damages, Defendants must prove with
a legal certainty that the amount in controversy actually meets
or exceeds the jurisdictional limit.  Plaintiff argues that
Defendants have not done so.

        On July 30, 2007, this Court ordered the parties to
submit supplemental briefing on the issue whether an employee
benefit plan existed, as identified by ERISA, and, if so, whether
the Policy falls under the ERISA plan.

        In their supplemental memorandum, Defendants note that

Plaintiff alleges that the CIGNA Defendants issued a long-term
disability insurance policy to Plaintiff's employer, Brown and
Caldwell.  In compliance with the applicable law, including §
104(b)(1) and § 104(9)(c) of ERISA, Brown and Caldwell provided
its employees with a "Wraparound Summary Plan Description of
Employee Welfare benefits of Brown and Caldwell", current as of
2004, ("the SPD").  [Exh. 10 to Defs.' Supp. Mem. ("2004 SPD");
Exh. 9 to Defs.' Supp. Mem., SPD, current as of 2007 ("2007
SPD").]  Defendants emphasize that the introduction of the SPD
states that it is intended to provide certain information
required by ERISA.  In addition, the Policy is fully funded by
Brown and Caldwell and it is available for full-time employees
working at least thirty-two hours a week.  Defendants note that,
under ERISA, a group insurance policy constitutes a written
instrument of an ERISA plan and they argue that the Policy meets
the criteria for an employee welfare benefit plan.  Finally,
Defendants assert that the Court should give great weight to the
fact that the Policy and the SPD specifically refer to an ERISA
plan.

        In his supplemental memorandum, Plaintiff argues that
the documents Defendants submitted with their supplemental
memorandum still do not constitute admissible evidence of an
ERISA plan because the SPDs and the insurance certificate cross-
reference Exhibit 2.  Plaintiff contends that the Policy falls

within the safe harbor regulations and is therefore excluded from
ERISA coverage.  Further, Plaintiff argues that Defendants have
not established the existence and implementation of an ERISA
employee benefit plan.  Plaintiff further contends that
Defendants cannot establish that he had standing to sue under the
plan because they allege that he failed to exhaust his
administrative remedies.  He reiterates that he is not seeking
remedies akin to those available under ERISA's civil enforcement
statute because he is not seeking benefits under the Policy.

        Plaintiff contends that ERISA does not govern the
quality of benefits received and that interpreting an ERISA plan
is unnecessary to adjudicate claims such as those based on
wrongful conduct of advisory nurses or malpractice in a non-
fiduciary capacity.  Plaintiff argues that pre-emption under §
1144(a) of ERISA can only be raised as a defense to state law
claims in state court; it does not create a federal cause of
action.  Further, even assuming, *arguendo*, that there is an ERISA
plan, Plaintiff asserts that his claims for intentional
infliction of serious emotional distress and insurer bad faith
are not pre-empted because they are not related to the plan.
Plaintiff argues that companies who sell insurance in Hawai`i
should not be excused from complying with Hawai`i state law or be
allowed to commit tortious acts merely because their conduct
arises out of a purported ERISA plan policy.

10

In their reply to Plaintiff's supplemental memorandum, Defendants argue that Plaintiff does not dispute that: LINA issued the Policy to Plaintiff's employer, Brown and Caldwell; Brown and Caldwell offered the plan to its employees; Brown and Caldwell fully funded the plan; the plan provided disability benefits to employees; Plaintiff was able to participate in the plan based on his status as an employee of Brown and Caldwell. Defendants contend that this is sufficient to establish an ERISA plan. Defendants also argue that the fact that Plaintiff sought benefits under the Policy and was initially granted benefits is evidence of the plan's implementation. They also note that several other allegations in the Complaint illustrate the implementation of the plan.

## DISCUSSION

Defendants removed the instant case pursuant to 28 U.S.C. §§ 1331, 1332(a), 1441(a) and (b), and 1446. [Notice of Removal at 2.] Section 1441 provides, in pertinent part:

> (a) Except as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending. . . .
> (b) Any civil action of which the district courts have original jurisdiction founded on a claim or right arising under the Constitution, treaties or laws of the United States shall be removable without regard to the citizenship or

11

> residence of the parties.  Any other such action
> shall be removable only if none of the parties in
> interest properly joined and served as defendants
> is a citizen of the State in which such action is
> brought.

28 U.S.C. § 1441 (a)-(b).  Section 1441 is strictly construed

against removal and courts resolve any doubts about the propriety

of removal in favor of remanding the case to state court.  See

Durham v. Lockheed Martin Corp., 445 F.3d 1247, 1252 (9th Cir.

2006).  The party seeking to remove the case bears the burden of

establishing the existence of federal jurisdiction.  See

California ex rel. Lockyer v. Dynegy, Inc., 375 F.3d 831, 838

(9th Cir. 2004).

I.   **Diversity Jurisdiction**

        Defendants asserted diversity jurisdiction as one of

the bases of removal.  Federal district courts have original

jurisdiction over cases where the amount in controversy exceeds

$75,000, exclusive of interest and costs, and where the matter in

controversy is between citizens of different states.  See 28

U.S.C. § 1332(a)(1).  Plaintiff is a Hawai`i resident.

[Complaint at ¶ 1.]  All of the corporations named as defendants

were incorporated in states other than Hawai`i and the two

individual defendants reside in states other than Hawai`i.

[Notice of Removal at ¶ 4.]  Thus, there is diversity of

citizenship among the parties.

        The parties dispute whether the amount in controversy

12

satisfies the minimum requirement for diversity jurisdiction.
The Complaint expressly states that the amount of damages,
excluding interest and costs, does not exceed $75,000.00.
[Complaint at ¶ 39.]  Defendants argue that the amount in
controversy is more than $200,000 because, if Plaintiff's
benefits are reinstated, or he is awarded damages based on the
terms of the Policy, he would be entitled to $2,631.04 a month
for eleven years.[2]  [Mem. in Opp. at 19.]

> The Ninth Circuit has recently addressed the question:
>
> What proof must the defendant adduce to contradict
> the plaintiff's claim that her damages are less
> than the jurisdictional amount?  There are two
> principles that inform our judgment here.  First,
> as federal courts, we are courts of limited
> jurisdiction and we will strictly construe our
> jurisdiction.  Kokkonen v. Guardian Life Ins. Co.
> of Am., 511 U.S. 375, 377, 114 S.Ct. 1673, 128
> L.Ed.2d 391 (1994); 13 Wright, Miller & Cooper, at
> § 3522.  Second, it is well established that the
> plaintiff is "master of her complaint" and can
> plead to avoid federal jurisdiction.  See, e.g.,
> Holmes Group, Inc. v. Vornado Air Circulation
> Sys., Inc., 535 U.S. 826, 831, 122 S.Ct. 1889, 153
> L.Ed.2d 13 (2002); Caterpillar Inc. v. Williams,
> 482 U.S. 386, 398-99, 107 S.Ct. 2425, 96 L.Ed.2d
> 318 (1987); Valles v. Ivy Hill Corp., 410 F.3d
> 1071, 1075 (9th Cir. 2005).  Accordingly, subject
> to a "good faith" requirement in pleading, a
> plaintiff may sue for less than the amount she may
> be entitled to if she wishes to avoid federal
> jurisdiction and remain in state court.  St. Paul
> Mercury Indem. Co. v. Red Cab Co., 303 U.S. 283,
> 288-89, 58 S.Ct. 586, 82 L.Ed. 845 (1938).  Where

---

[2] Defendants state that Plaintiff is fifty-five years old
and, under the Policy, normal retirement age is sixty-six.  At
the time the CIGNA Defendants terminated his benefits, Plaintiff
was receiving $2,631.04 a month.  [Mem. in Opp. at 19.]

the plaintiff has alleged her facts and pled her
damages, and there is no evidence of bad faith,
the defendant must not only contradict the
plaintiff's own assessment of damages, but must
overcome the presumption against federal
jurisdiction. See id. at 290, 58 S.Ct. 586. We
think that the familiar "legal certainty" standard
best captures the proof the defendant must
produce. We are joined in this judgment by the
Third Circuit, which recently held in a CAFA case,
Morgan v. Gay, that "[g]ood faith in this context
is entwined with the legal certainty test, so that
a defendant will be able to remove the case to
federal court by showing to a legal certainty that
the amount in controversy exceeds the statutory
minimum." 471 F.3d [469,] 474 [(3d Cir. 2006)]
(internal quotation marks omitted).

Lowdermilk v. U.S. Bank Nat'l Ass'n, 479 F.3d 994, 998-99 (9th

Cir. 2007). By adopting the legal certainty standard, the Ninth

Circuit "guard[ed] the presumption against federal jurisdiction

and preserve[d] the plaintiff's prerogative, subject to the good

faith requirement, to forgo a potentially larger recovery to

remain in state court." Id. at 999.

Although Lowdermilk addressed the jurisdictional

threshold amount under the Class Action Fairness Act ("CAFA"),

other judges in this district have applied Lowdermilk outside of

the class action context. In Sylvester v. Menu Foods, Inc., the

district judge noted that: "Although Lowdermilk involved a class

action under the Class Action Fairness Act of 2005, the Court

finds the reasoning and holding of Lowdermilk equally applicable

in the non-class action context." Civ. No. 07-00409 ACK-KSC,

2007 WL 4291024, at *4 (D. Hawai`i Dec. 5, 2007) (citation

14

omitted) (adopting the magistrate judge's findings and
recommendation to grant motion to remand).[3]

In the present case, the Complaint alleges that
Defendants knew that Plaintiff is disabled and terminated his
disability benefits on a pretextual ground.  It also alleges that
Defendants conspired to deprive him of benefits due him under the
Policy, and that they refuse to comply with the terms of the
Policy.  [Complaint at ¶¶ 26-27, 30.]  The Complaint, however,
does not request the reinstatement of benefits under the Policy.
Subject to a good faith requirement, as the master of his
complaint, Plaintiff was free to sue for less than he may be
entitled to recover in order to stay in state court.  Plaintiff
apparently chose to forego seeking the reinstatement of benefits
to avoid federal jurisdiction.  Defendants have not pointed to
any evidence which indicates that Plaintiff did so in bad faith.

_____

[3] The district judge noted that the Ninth Circuit's decision
in Guglielmino v. McKee Foods Corp., 506 F.3d 696 (9th Cir.
2007), may cast doubt upon the applicability of Lowdermilk to the
determination of diversity jurisdiction.  See Sylvester, 2007 WL
4291024, at *5.  In Guglielmino, the Ninth Circuit noted that the
CAFA does not have the one-year limitation on removal which
applies to the removal of cases based on diversity jurisdiction.
The Ninth Circuit raised, but did not decide the questions:
"Whether CAFA's elimination of the closure period is a sufficient
distinguishing characteristic of those causes of action to
justify a different burden of proof, and whether Lowdermilk
itself can be read so narrowly[.]" Guglielmino, 506 F.3d 696,
700 n.3.  In Sylvester, the district judge ruled that, even if
the preponderance of the evidence standard applied, the
defendants still could not establish the requisite amount in
controversy.  See 2007 WL 4291024, at *5.

Defendants argue that, even if Plaintiff does not seek the reinstatement of his benefits, the benefits he would receive are relevant to the determination of his damages.  Plaintiff alleges that he

> has suffered and will continue to suffer serious
> emotional distress and mental anxiety, worry,
> sleeplessness, inability to maintain his normal
> living situation, meet his living expenses and to
> pay his and his family's debts, all of which has
> adversely affected Plaintiff's health.  Plaintiff
> has also suffered and continues to suffer mental
> anxiety, anger, frustration, emotional distress
> and concern and has further lost the benefit of
> life insurance policies and has otherwise suffered
> financial losses and his quality of life has been
> greatly diminished . . . .

[Complaint at ¶ 38.]  Defendants have presented no evidence to show that the disability benefits Plaintiff could receive approximate the damages identified in the Complaint.  Further, to the extent that there is an ambiguity regarding the measure of Plaintiff's claimed damages, this Court must interpret the ambiguity in favor of remand.  This Court therefore declines to consider Plaintiff's potential benefits in determining the amount in controversy.[4]

Defendants have produced no other evidence that the amount in controversy exceeds $75,000.00.  The Court can only

---

[4] In <u>Sylvester</u>, the district judge noted that "<u>Guglielmino</u> suggests that judicial estoppel could preclude Plaintiffs from being entitled to a recovery larger than $75,000 per Plaintiff." <u>See</u> 2007 WL 4291024, at *6 (citations omitted).  This Court will leave the estoppel issue for another time.

speculate as to the amount in controversy and such speculation does not satisfy either the legal certainty or preponderance of the evidence standard.  See <u>Sylvester</u>, 2007 WL 4291024, at *6. Defendants have not met their burden of proof regarding the minimum amount in controversy.  This Court therefore FINDS that the federal courts do not have diversity jurisdiction over the instant case.

## II.  <u>Federal Question Jurisdiction</u>

Defendants also contend that removal was proper based on federal question jurisdiction.  "The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."  28 U.S.C. § 1331.  Courts usually apply the "well-pleaded complaint" rule to determine whether a case arises under federal law.  See <u>Aetna Health Inc. v. Davila</u>, 542 U.S. 200, 207 (2004).  Under the well-pleaded complaint rule,

> whether a case is one arising under the Constitution or a law or treaty of the United States, in the sense of the jurisdictional statute[,] . . . must be determined from what necessarily appears in the plaintiff's statement of his own claim in the bill or declaration, unaided by anything alleged in anticipation of avoidance of defenses which it is thought the defendant may interpose.

<u>Id.</u> (citation and quotation marks omitted) (alterations in original).  Thus, as a general rule, the existence of a federal defense does not give rise to federal question jurisdiction.  <u>See</u>

17

id. Pre-emption, however, is an exception to the well-pleaded complaint rule. State law claims can be removed if "a federal statute wholly displaces the state-law cause of action through complete pre-emption[.]" Id. (citation and quotation marks omitted).

A. **ERISA Pre-emption**

ERISA, with its "expansive pre-emption provisions" and "integrated enforcement mechanism" completely pre-empts "any state-law cause of action that duplicates, supplements, or supplants the ERISA civil enforcement remedy [because it] conflicts with the clear congressional intent to make the ERISA remedy exclusive . . . ." Id. at 209 (citations omitted). In fact, "the ERISA civil enforcement mechanism is one of those provisions with such extraordinary pre-emptive power that it converts an ordinary state common law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule." Id. (citation and quotation marks omitted).

State common law claims are pre-empted by ERISA "insofar as they may now or hereafter relate to any employee benefit plan" regulated by ERISA. 29 U.S.C. § 1144(a). Before determining whether Plaintiff's claims relate to an employee benefit plan, this Court must first determine whether Plaintiff may assert an ERISA claim. See Miller v. Rite Aid Corp., 504 F.3d 1102, 1105 (9th Cir. 2007). A "participant" in an ERISA

18

plan may bring a civil action under ERISA.  See 29 U.S.C. §
1132(a)(1).  A "participant" is "any employee or former employee
. . . who is or may become eligible to receive a benefit of any
type from an employee benefit plan[.]" 29 U.S.C. § 1002(7).  The
instant case arises from the termination of Plaintiff's
disability benefits under the Policy.  Plaintiff qualified for
coverage under Policy because of his employment with Brown and
Caldwell.  Thus, Plaintiff is a participant for purposes of ERISA
if the Policy is part of an employee benefit plan.

### 1.   Employee Benefit Plan

At the outset, the Court must address Plaintiff's
argument that the Court cannot consider Exhibit 2 because it is
inadmissible hearsay.  He also argues that the Court should not
consider the SPDs and insurance certificate that Defendants
submitted with their supplemental memorandum because they are
premised upon Exhibit 2.  The Ninth Circuit, however, has
rejected similar arguments.  In Stuart v. UNUM Life Insurance Co.
of America, the Ninth Circuit stated:

> Hearsay is an out-of-court statement introduced to
> prove the truth of the matter asserted.  See
> Fed.R.Evid. 801(c). If, however, an out-of-court
> statement's significance
>> lies solely in the fact that it was made, no
>> issue is raised as to the truth of anything
>> asserted, and the statement is not hearsay. .
>> . .  The effect is to exclude from hearsay
>> the entire category of "verbal acts" and
>> "verbal parts of an act," in which the
>> statement itself affects the legal rights of
>> the parities or is a circumstance bearing on

19

> conduct affecting their rights.
> Id., advisory committee's note (emphasis added).
> The Policy is, therefore, excluded from the
> definition of hearsay and is admissible evidence
> because it is a legally operative document that
> defines the rights and liabilities of the parties
> in this case.

217 F.3d 1145, 1154 (9th Cir. 2000) (some citations omitted).

This Court therefore finds that Exhibit 2 is not hearsay.

Plaintiff also argues that the Court should not

consider Exhibit 2 because it is not signed or sworn and it does

not indicate the effective date.  Plaintiff, however, has not

claimed that Exhibit 2 does not accurately reflect the terms of

the Policy.  This Court therefore finds that Exhibit 2 is

admissible for purposes of the instant Motion.  Similarly, the

Court rejects Plaintiff's argument that the SPDs and insurance

certificate are inadmissible because they are premised upon

Exhibit 2.  The Court now turns to the issue whether the Policy

is part of an employee benefit plan.

An employee welfare benefit plan is one type of

employee benefit plan.  See 29 U.S.C. § 1002(3).  An "employee

welfare benefit plan" is

> any plan, fund, or program which was heretofore or
> is hereafter established or maintained by an
> employer or by an employee organization, or by
> both, to the extent that such plan, fund, or
> program was established or is maintained for the
> purpose of providing for its participants or their
> beneficiaries, through the purchase of insurance
> or otherwise, (A) medical, surgical, or hospital
> care or benefits, or benefits in the event of
> sickness, accident, disability, death or

> unemployment, or vacation benefits, apprenticeship
> or other training programs, or day care centers,
> scholarship funds, or prepaid legal services . . .
> .

§ 1002(1).

In the present case, the SPDs state that they are "intended to provide you with an overview of the coverages available under the employee welfare Plan offered by **Brown and Caldwell**." [2007 SPD, Introduction (emphasis in original); <u>see also</u> 2004 SPD, Introduction.]  The mere fact that Brown and Caldwell issues SPDs supports Defendants' argument that the Policy is part of an ERISA plan because ERISA requires that participants and beneficiaries be furnished with "a summary plan description of any employee benefit plan".  <u>See</u> 29 U.S.C. § 1022(a).  The benefits of the Brown and Caldwell plan include, *inter alia*, medical, dental, vision, disability insurance, and life insurance.  [2007 SPD, Table of Contents; 2004 SPD, Table of Contents.]  Moreover, the SPDs state that they are "intended to provide you with certain information as required by the Employee Retirement Income Security Act of 1974 ("ERISA") . . . ."  [2007 SPD, Introduction; 2004 SPD, Introduction.]  The SPDs also include a section titled "STATEMENT OF ERISA RIGHTS", which reads:

> Plan participants are entitled to certain rights
> and protections under the Employee Retirement
> Income Security Act of 1974 (ERISA).  ERISA
> provides that a Plan participant shall be entitled
> to:

21

- **Receive Information About His/Her Plan and Benefits. . . .**
  . . . .
- **Continue Group Health Plan Coverage. . . .**
  . . . .
- **Prudent Actions by Plan Fiduciaries.**
  . . . .
- **Enforce His/Her Rights**
  . . . .
- **Assistance With His/Her Questions**
  . . . .

[2007 SPD at 23-24; 2004 SPD at 18-19 (emphases in original).]

The Policy is part of a plan established or maintained by Plaintiff's employer for the purpose of providing its participants with, *inter alia*, benefits in the event of disability. The Court therefore finds that Brown and Caldwell's plan is employee welfare benefit plan for purposes of ERISA and that Plaintiff is a participant for purposes of ERISA.

### a. <u>Safe Harbor</u>

Plaintiff also argues that the Policy falls within the "safe harbor" regulation. <u>See</u> 29 C.F.R. § 2510.3-1(j). If a group insurance plan that an employer offers to its employees meets all four requirements of the safe harbor regulation, "the employer's mere purchase of insurance does not, in and of itself, create an employee welfare benefit plan under ERISA." <u>Stuart</u>, 217 F.3d at 1149 (citations omitted). The safe harbor regulation states:

> For purposes of Title I of the Act and this chapter, the terms "employee welfare benefit plan" and "welfare plan" shall not include a group or

22

group-type insurance program offered by an insurer
to employees or members of an employee
organization, under which
> (1) No contributions are made by an employer
> or employee organization;
> (2) Participation the program is completely
> voluntary for employees or members;
> (3) The sole functions of the employer or
> employee organization with respect to the
> program are, without endorsing the program,
> to permit the insurer to publicize the
> program to employees or members, to collect
> premiums through payroll deductions or dues
> checkoffs and to remit them to the insurer;
> and
> (4) The employer or employee organization
> receives no consideration in the form of cash
> or otherwise in connection with the program,
> other than reasonable compensation, excluding
> any profit, for administrative services
> actually rendered in connection with payroll
> deductions or dues checkoffs.

§ 2510.3-1(j).

In the present case, the SPDs state that the short term disability insurance policy and the core plan of long term disability insurance policy are fully funded by Brown and Caldwell.[5]  The buy-up plan of the long term disability insurance policy is fully funded by the employee.  [2004 SPD at 7-8; 2007 SPD at 7-8.]  It cannot be said that "no contributions are made by an employer".   See § 2510.3-1(j)(1).  The safe harbor regulation therefore does not apply.

---

[5] The short term disability insurance and the long term disability insurance are apparently part of the same policy as both are included within Policy Number SKL30004.  [2004 SPD at 7-8; 2007 SPD at 7-8.]

### b.   __Administrative Remedies__

Plaintiff also argues that ERISA pre-emption does not apply because he could not bring an ERISA claim due his failure to exhaust his administrative remedies.  Plaintiff's argument is misplaced.  A claimant cannot avoid ERISA's pre-emptive effect by choosing to forego his administrative remedies.  Such a rule would frustrate ERISA's provision of "a uniform regulatory regime over employee benefit plans", as well as Congress' intent "to ensure that employee benefit plan regulation would be exclusively a federal concern."  See Aetna Health, 542 U.S. at 208 (citation and quotation marks omitted).  This Court therefore finds that, for purposes of this Motion, Plaintiff could have asserted ERISA claims.[6]  The Court now turns to the issue whether Plaintiff's claims relate to an employee benefit plan.

### 2.   __Relation to an ERISA Plan__

"Generally speaking, a common law claim 'relates to' an employee benefit plan governed by ERISA 'if it has a connection with or reference to such a plan.'"  Providence Health Plan v. McDowell, 385 F.3d 1168, 1172 (9th Cir. 2004) (quoting New York State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co., 514 U.S. 645, 655-56 (1995)).  Courts in the Ninth Circuit use a relationship test to determine whether a claim has

---

[6] The Court expresses no opinion on Defendants' argument that instant case should be dismissed for failure to exhaust administrative remedies.

a "connection with" an ERISA plan.  See id.  "Specifically, the
emphasis is on the genuine impact that the action has on a
relationship governed by ERISA, such as the relationship between
the plan and a participant."  Id. (citations omitted).  Plaintiff
seeks damages caused by Defendants' wrongful conduct.  He does
not seek reinstatement of his benefits nor does he seek payment
of benefits which he claims were wrongfully withheld.[7]  Plaintiff
does not seek injunctive relief.  If he prevails on his claims
and Defendants must pay such damages, it will not affect the
relationship between Plaintiff and the plan, or any other
relationship governed by ERISA.  This Court therefore finds that
Plaintiff's claims do not have a connection with an ERISA plan.

       A claim has a "reference to" an ERISA plan if "the
claim is premised on the existence of an ERISA plan, and . . .
the existence of the plan is essential to the claim's survival."
Id. (citing California Div. of Labor Standards Enforcement v.
Dillingham Constr., N.A., Inc., 519 U.S. 316, 324-25 (1997))
(some citations omitted).  Plaintiff alleges the following
claims: violation of Haw. Rev. Stat. § 431:1-102; violation of
Haw. Rev. Stat. § 431-13-101, et seq., in particular the
prohibition against unfair claims and settlement practices set
forth in Haw. Rev. Stat. § 431-13-103(a)(11); civil conspiracy;

---

       [7] As noted in section I., the Court declines to use the
amount of benefits Plaintiff would receive if his benefits were
reinstated as a measure of his damages.

first party insurer bad faith; negligence; and intentional and/or negligent infliction of emotional distress.  [Complaint at ¶¶ 22, 25, 27.]  Plaintiff's claims are based upon, *inter alia*, the following wrongful conduct: termination of his benefits without a reasonable investigation; termination of his benefits with knowledge that he was in fact disabled; failure to adopt and implement reasonable standards for the prompt investigation of claims; failure to make a good faith attempt to reach a prompt, fair and equitable settlement; conspiracy to provide a pretext for the termination of his benefits; refusal to identify the facts or Policy language that they relied upon to terminate his benefits; refusal to provide information relating to Plaintiff's appeal of the termination; refusal to pay for psychological testing that Defendants claimed was necessary to prove Plaintiff's disability.  [Complaint at ¶¶ 22-27.]  To the extent that Plaintiff's claims are premised upon the allegedly wrongful termination of his benefits under the Policy and the allegedly wrongful conduct during the dispute over the termination of his benefits, Plaintiff's claims are premised upon the existence of an ERISA plan.[8]  This Court therefore finds that those claims have a reference to an ERISA plan and therefore relate to an employee benefit plan governed by ERISA.  The Court finds that

---

[8] Due to the way Plaintiff drafted the Complaint, the Court cannot determine which factual allegations Plaintiff relies upon to support each claim.

26

there is federal question jurisdiction over those claims because
they are completely pre-empted by ERISA.

      B.    **<u>Supplemental Jurisdiction</u>**

           Plaintiff argues that ERISA does not address claims
dealing with the quality of benefits received under an ERISA plan
and that his conspiracy claim has nothing to do with ERISA.  Even
assuming, *arguendo*, that some of Plaintiff's claims are not
completely pre-empted by ERISA, the district court may exercise
supplemental jurisdiction over those claims pursuant to 28 U.S.C.
§ 1367(a).  <u>See</u> <u>Darcangelo v. Verizon Commc'ns, Inc.</u>, 292 F.3d
181, 187 (4th Cir. 2002) (noting that the district court had
supplemental jurisdiction over the plaintiff's non-preempted
state law claims where the contract claim was completely pre-
empted by ERISA).

           Section 1367(a) provides, in pertinent part:

> Except as provided in subsections (b) and (c) or
> as expressly provided otherwise by Federal
> statute, in any civil action of which the district
> courts have original jurisdiction, the district
> courts shall have supplemental jurisdiction over
> all other claims that are so related to claims in
> the action within such original jurisdiction that
> they form part of the same case or controversy
> under Article III of the United States
> Constitution. . . .

Plaintiff's claims all arise from events surrounding the
termination of his disability benefits or arose during the
dispute over the termination.  The claims which are premised upon
the assertions that Defendants' wrongfully terminated Plaintiff's

27

benefits or are based upon actions Defendants took in the course of dispute over the termination are completely pre-empted by ERISA and are effectively transformed into federal claims.  Even assuming, *arguendo*, that some of Plaintiff's other claims, such as his conspiracy claim, are not pre-empted by ERISA, the state law claims do not "substantially predominate[] over" the claims pre-empted by ERISA.  <u>See</u> § 1367(c)(2).  Further, the state law claims do not raise "a novel or complex issue of State law".  <u>See</u> § 1367(c)(1).  This Court therefore finds that, to the extent that some of Plaintiff's claims are not pre-empted by ERISA, the district court has supplemental jurisdiction over those claims.

<u>CONCLUSION</u>

On the basis of the foregoing, this Court HEREBY FINDS that the federal courts have jurisdiction over Plaintiff's claims AND RECOMMENDS that the district judge DENY Defendants' Motion to Remand, filed May 11, 2007.

IT IS SO FOUND AND RECOMMENDED.

DATED AT HONOLULU, HAWAI`I, March 6, 2008.



  /S/ Leslie E. Kobayashi
Leslie E. Kobayashi
United States Magistrate Judge

**ARNOLD JAMES PADGETT V. CIGNA CORPORATION, ET AL; CV 07-00200 DAE-LEK; FINDINGS AND RECOMMENDATION TO DENY PLAINTIFF'S MOTION TO REMAND**

28